IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEO B. TURNER,

        Plaintiff,                      No. 2:11-cv-2343 GGH P

    vs.

R. COLON, et al.,

        Defendants.              <u>ORDER</u>

           Plaintiff is a prison inmate proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. On September 10, 2012, plaintiff filed a request to this court for copies of his documents pertaining to this case, contending that a Correctional Officer Smith (not a party to the instant action) had destroyed all of plaintiff's property, including, in addition to his eyeglasses, all of his "paperwork" relating to this action. Docket # 32. Plaintiff claimed that C/O Smith's actions had been in retaliation for plaintiff's having brought the instant lawsuit.

           No defendants having been served at that time, the undersigned invoked the All Writs Act, 28 U.S.C. § 1651(a), directing the warden of Kern Valley State Prison (KVSP) to inform the court whether plaintiff's documents pertaining to this case had been removed so that he no longer had access to them or had been destroyed and, if so, why. <u>See</u> <u>Order</u>, filed on

1

September 14, 2012. On October 1, 2012, plaintiff filed a motion requesting the court to send him copies of his second amended complaint.

Thereafter, on October 8, 2012, counsel for newly-served defendant Colon sought an extension of time to respond to the September 14th order, which was granted by order filed on October 10, 2012. In the interim, on October 15, 2012, plaintiff filed a document indicating that he had written a 602 grievance, on September 25, 2012, regarding C/O Smith's having allegedly stolen plaintiff's legal mail and had also written a citizen's complaint directed to KVSP Warden Biter. Plaintiff contends that unidentified correctional officers entered his cell "and stole the C/O's name that signed my legal mail to the warden." Docket # 38. Plaintiff claims his 602 grievance and citizen's complaint "never made it to the warden;" instead, his letter to the warden was intercepted by unidentified C/O's and sent to the appeals coordinator. Id. Plaintiff reiterates his complaint that his legal paperwork regarding the instant complaint has been destroyed and asks that CDCR be compelled to pay for his court paperwork. Id. Plaintiff indicates that he had received notice that his appeal (staff complaint) had been sent to a staff reviewer and the response was due by October 25, 2012. Id.

Defendant Colon's October 22, 2012, response to the court's order includes declarations from: KVSP C/O M.A. Johnson, the assigned housing officer for Delta 2 Building, where plaintiff is apparently currently housed; Correctional Sergeant M. Palmer, assigned to the KVSP Receiving and Release (R&R); and C/O H. Smith assigned to the Delta 1 Building where plaintiff had evidently been housed (and apparently the individual against whom plaintiff has made his allegations of having been deprived of his legal property). See Reply at docket # 39, Attachments 1, 2 & 3. C/O Johnson declares that at the request of the KVSP litigation coordinator, he/she searched plaintiff's cell to determine whether he still had possession of any legal property and whether his legal property had been destroyed and found "a limited number of papers directly related to this case, approximately fifteen pages of legal documents." Docket # 39, Attachment 1, Johnson Declaration, ¶¶ 2-3. When C/O Johnson, who declares he/she did

not remove or destroy any of plaintiff's property, asked plaintiff whether any of his property was missing, plaintiff told him/her he was missing property and did not know where it was; according to C/O Johnson, plaintiff was not able to describe either the missing property or where or when the property was lost. Id.,¶¶ 4-5.

Correctional Sergeant Palmer declares that he/she conducted a thorough search for plaintiff's property in the property storage areas, including the R&R property room, the Out to Court and Out to Medical property storage and found no property belonging to plaintiff. Docket # 39, ¶¶ 3-5. Corr. Sgt. Palmer also conducted a search to determine where plaintiff had been housed while at KVSP, discovered he had been housed in Administrative Segregation (Ad Seg) in Unit 1 of Facility B from April 24, 2012, until June 30, 2012, and instructed C/O Tamillo, the officer in charge of Facility B Unit 1, to search for any of plaintiff's property in the Ad Seg property storage. Id., ¶ 6. According to Corr. Sgt. Palmer, C/O Tamillo reported that none of plaintiff's property remained in Ad Seg storage. Id.

Sgt. Palmer also identifies Article 43 of the Departmental Operations Manual as governing confiscation and destruction of inmate property. Id., ¶ 7. An inmate is allowed the opportunity to mail confiscated property home; if unwilling or unable to do so, in accordance with CDCR policy, such property is either donated or destroyed. Id. Sgt. Palmer declares that all destroyed or donated property is recorded in an inmate's Central File; following Sgt. Palmer's search of the property disposition log book for any record of confiscated or destroyed property of plaintiff's, he/she found no such record. Id.

C/O Smith, who declares he has never destroyed or confiscated any of plaintiff's property nor ever retaliated against him, declares that on August 25, 2012, when plaintiff was released from his cell for dinner, plaintiff informed C/O Smith that "he was feeling suicidal and homicidal and requested to be seen by a mental health professional." Reply at docket # 39, Attachment 3, ¶¶ 2, 11. When, in accordance with institution procedure, C/O Smith radioed Search and Escort officers to take plaintiff to the Correctional Treatment Center (CTC), Smith

was told it would be fifteen minutes before the officers would arrive. Id., ¶ 3. C/O Smith told plaintiff he would have to wait for the Search and Escort officers and that, for his own safety as well as the safety of others, he (Smith) would handcuff him and place him in the shower. Id., ¶ 4. C/O Smith overheard plaintiff ask his cellmate to take his glasses and saw plaintiff hand his glasses to his cellmate, after which plaintiff was handcuffed and placed in the shower to await the arrival of the Search and Escort officers. Id. These officers removed him from the Delta 1 Building and while plaintiff was on suicide watch, his personal property remained in his Delta 1 Building cell, with only plaintiff's inmate having access to the cell; no other inmate was assigned to the cell during the period plaintiff was on suicide watch. Id., ¶¶ 5-6.

When, several days later, C/O Smith was told that plaintiff was being released from CTC and would be housed in Delta 2 Building, C/O Smith went to plaintiff's Delta 1 Building cell to collect and transport plaintiff's property. Id., ¶¶ 7-8. Although C/O Smith does not remember whether plaintiff's eyeglasses were among the personal property he collected, Smith declares that he bagged the property that plaintiff's cellmate had separated, placed in a corner and confirmed to him was all of plaintiff's property. Id., ¶ 8. When C/O Smith delivered the bag of property to plaintiff in the Delta 2 Building, plaintiff did not tell him he was missing any property; moreover, C/O Smith declares, he sees plaintiff on a regular basis when he assists with release in Delta 2, and plaintiff has never informed him about any missing property. Id., ¶¶ 9-10.

The three declarations under penalty of perjury have been submitted by non-party prison correctional staff and although there is no explanation for how of any of plaintiff's property related to this case may have been lost, there does not appear to be any evidence that plaintiff's legal property has been stolen, confiscated or destroyed by C/O Smith or any other correctional officer. In any case, the order filed on September 14, 2012, has been discharged. As of October 29, 2012, defendant Colon, evidently the only one of the four named defendants who has yet been served, filed a motion to revoke plaintiff's in forma pauperis status. Because, for

whatever reason, plaintiff does not have a copy of his second amended complaint, filed on December 12, 2011,[1] the court *on this occasion only* will direct the Clerk of the Court to provide plaintiff with a copy of plaintiff's second amended complaint, as well as a copy of the exhibits plaintiff submitted that were filed separately.

Accordingly, IT IS ORDERED that:

1. The order filed on September 14, 2012, has been discharged;

2. Plaintiff's motion for the court to provide a copy of his second amended complaint, filed on October 1, 2012 (docket # 34), is granted *on this occasion only* and the Clerk of the Court is directed to provide plaintiff a copy of the second amended complaint (ten pages), filed on December 12, 2011 (docket # 19), as well as a copy of plaintiff's exhibit (eleven pages), filed on December 21, 2011 (docket # 21), for a total of 21 pages; however,

3. Absent appropriate payment made to the Clerk's Office for copies in future, plaintiff will be provided no further copies from his case docket by this court for any reason.

DATED: November 6, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
turn2343.ord2

---

[1] The court order plaintiff to provide the documents necessary for service upon defendants of the second amended complaint by order filed on March 7, 2012; ultimately, plaintiff did not submit the requisite documents until July 26, 2012, and the court ordered the service of the second amended complaint by order filed on August 16, 2012.